UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|   |   |   |
|---|---|---|
| K.S., by her interim guardians ad litem, and DOROTHY SPIOTTA and PAUL SPIOTTA, | ) ) ) ) | NO. CV-08-243-FVS |
| Plaintiffs, | ) ) | FINDINGS AND RECOMMENDATIONS |
| v. | ) ) | |
| AMBASSADOR PROGRAMS INC.; AMBASSADORS GROUP, INC.; and PEOPLE TO PEOPLE INTERNATIONAL, | ) ) ) ) | |
| Defendant, | | |

**THIS MATTER** comes before the Court without oral argument based upon a dispute over the use of certain contracts (hereafter "Agreements") in further court proceedings. K.S., Dorothy Spiotta, and Paul Spiotta are represented by Timothy K. Ford and Katherine C. Chamberlain. Kenneth Isserlis is the guardian ad litem for K.S. Defendants Ambassador Programs, Inc., and Ambassadors Group, Inc. (hereafter "Ambassador"), are represented by Brian T. Rekofke, Jerry S. Phillips, and Geana M. Van Dessel. Defendant People to People International Inc. (hereafter "PTPI") is represented by James B. King.

## BACKGROUND

There are three Defendants. They are Ambassador Programs, Inc., Ambassadors Group, Inc., and People to People International Inc. They have executed the Agreements governing their respective relationships with each other. The Defendants have disclosed copies of the Agreements to the Plaintiffs subject to a private confidentiality agreement prohibiting the Plaintiffs from

FINDINGS AND RECOMMENDATIONS - 1

revealing the contents of the contracts to the public. The Plaintiffs have filed a motion to compel (Ct. Rec. 100) requesting the Court to enter an order both releasing them from their agreement with the Defendants and authorizing them to use the Agreements in this action without restriction. The Defendants have filed a motion (Ct. Rec. 122) requesting the Court to issue a protective order maintaining the confidentiality of the contracts.

The Plaintiffs say they intend to file copies of the contracts in support of dispositive motions and will use the contracts at trial (Ct. Rec. 105). The parties have been ordered to file copies of the contract documents and related deposition testimony under seal so that the documents may be inspected *in camera* by the Court to determine whether they should be revealed to the public. Ct. Rec. 142

The issues have been referred to the undersigned Magistrate Judge for Findings and Recommendation (Ct. Rec. 143).

## FACTUAL ALLEGATIONS

This is a case involving allegations of negligence, breach of contract, fraud, and consumer protection violations. Plaintiffs allege the Defendants made false representations about the People to People Student Ambassador Program, including but not limited to allegedly misrepresenting to the Plaintiffs that PTPI had selected K.S. to be a student ambassador in Australia during summer 2006. Defendants generally deny the allegations, but admit that Ambassador Programs, Inc. plans, organizes, markets and implements overseas trips for minor children, including the one attended by K.S.

FINDINGS AND RECOMMENDATIONS - 2

1    Following commencement of suit, Plaintiffs served discovery
2  requests on the Defendants, asking for production of Agreements
3  between the defendants, and any other documents, that describe the
4  relationships between Ambassador and PTPI. See RFP #14, Ct. Rec.
5  102, Ex. 1. Defendants responded that the documents responsive to
6  the request would "be produced after an appropriate
7  confidentiality agreement is executed by the parties." Thereafter,
8  the parties negotiated for either complete surrender of the
9  agreements (Plaintiffs) or a protective order (Defendants). Unable
10 to reach final agreement and with scheduled depositions of the
11 Defendants' Chief Executive Officers approaching, the parties
12 entered into a temporary agreement for the limited use of the
13 agreements pending a final negotiated resolution by the parties or
14 order from the Court. Defendants produced the Agreements pursuant
15 to the temporary written agreement. The temporary written
16 agreement provides that the Agreements will be produced but may
17 only be used for the taking of specific depositions, that those
18 depositions be sealed and that the Agreements and the deposition
19 transcripts may only be viewed by counsel for the parties. Ct.
20 Rec. 102, Ex. 6,7,8.

21    Following the depositions of the Defendants' CEOs, the
22 Defendants filed their Joint Motion for Protective Order. Ct. Rec.
23 122. In support thereof, Defendants allege that the Agreements
24 contain "privileged, confidential and proprietary matters." Ct.
25 Rec. 123, 124.

26    Defendants argue that the contracts between PTPI and
27 Ambassador spell out Ambassador's right to use and restrictions of
28 said use, the trademark-registered and protected PTPI service mark

FINDINGS AND RECOMMENDATIONS - 3

1  and logo in the educational student travel and exchange programs
2  that Ambassador conducts. The Defendants argue that the contracts
3  spell out details of what PTPI and Ambassador require from their
4  relationship with each other and that said details are
5  confidential and proprietary in nature. They argue that
6  Ambassador's travel "model" is unique and different than that used
7  by Ambassador's competitors and reveals information that would
8  give Ambassador's competitors a significant competitive advantage
9  if disclosed. The Defendants argue that the General Contract
10 agreement specifically lists royalty fees paid by Ambassador to
11 PTPI. They urge that this information, if revealed, would also
12 strengthen the bargaining position of competitor companies that
13 negotiate with PTPI and/or other companies Ambassador enters into
14 business with. They argue that by knowing the exact term of the
15 contracts, Ambassador's competitors would know the precise time to
16 contact PTPI to compete with Ambassador in any renewal of the
17 business relationship. Defendants assert that they have been
18 denied access to licensing agreements between their competitors
19 because of the competitive advantage they would have obtained. Ct.
20 Rec. 146. Finally, the Defendants argue that the contracts between
21 them have never been publicly disclosed and when produced in other
22 litigation matters have always been subject to a stipulation and
23 protective order similar to the one proposed by the Defendants
24 initially. In sum, Defendants request that the Court enter a
25 protective order prohibiting the Plaintiffs from disclosing the
26 contents of the contracts to the public and requiring the
27 Plaintiffs to file the contracts under seal if the contracts are
28 filed as part of the Court record. Ct. Rec. 128,p.2.

FINDINGS AND RECOMMENDATIONS - 4

**THE AGREEMENTS**

The Agreements have been filed under seal with the Court. Ct. Rec. 144. The relevant case law suggests that the disputed documents should be reviewed *in camera* by the Court to determine if those documents contain, in the Court's view, privileged, confidential and/or proprietary information or are otherwise subject to a protective order. Kamakana v. Honolulu, 447 F.3d 1172, 1177 (9th Cir. 2006).

In this case, the Agreements consist of the following documents:

1. General Contract Between People To People International and International Ambassador Programs, Inc. People To People Student Ambassador Program- Bates Stamped AMB001478-AMB001485 (hereafter "General Contract")

2. Consent To Assignment Agreement- Bates Stamped AMB001486-AMB001491

3. Amendment To General Contracts- Bates Stamped AMB001492-AMB001493

4. Letter Agreement- Bates Stamped AMB001494

5. Letter Agreement- Bates Stamped AMB001495

The Agreements are discussed in some detail in the depositions identified hereafter:

6. Deposition Transcript (partial) of Jeffrey Thomas- March 12, 2009

7. Deposition Transcript (partial) of Mary Jean Eisenhower- June 17, 2009

FINDINGS AND RECOMMENDATIONS - 5

1    The Court has reviewed each of the documents identified *in*

2    *camera*. Plaintiffs have determined that the General Contract is

3    the primary agreement between the defendants that Plaintiffs

4    intend to use in this litigation in dispositive motions and at

5    trial. Ct. Rec. 145.

**LEGAL STANDARDS**

7    Upon a showing of "good cause" the Court has broad latitude

8    to enter an order  requiring that "a trade secret or other

9    confidential research, development, or

10   commercial information not be revealed or be revealed only in a

11   specified way." Fed.R.Civ.P.26(c)(1)(G); *Phillips v. Gen. Motors*

12   *Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

13   "A party asserting good cause bears the burden, for each

14   particular document it seeks to protect, of showing that specific

15   prejudice or harm will result if no protective order is granted."

16   Foltz v. State Farm Mut. Auto. Ins.Co., 331 F.3rd 1122, 1130 (9th

17   Cir. 2003)

18   A district court must have "compelling reasons" in order to

19   shield a judicial record from public access when the record is

20   attached to a **dispositive** motion. *Pintos v. Pacific Creditors*, 565

21   F.3d 1106, 1115-16 (9th Cir.2009); *Kamakana v. City & County of*

22   *Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir.2006).

23   Under the compelling reasons standard, the court weighs

24   relevant factors; the Court's analysis is reviewed for abuse of

25   discretion. *Pintos v. Pac. Creditors Assoc.*, *supra.* "Relevant

26   factors include the public interest in understanding the judicial

27   process and whether disclosure could result in improper use of the

28

FINDINGS AND RECOMMENDATIONS - 6

1  material for scandalous or libelous purposes or infringement upon

2  trade secrets." *Id.*, n. 6; *Kamakana*, 447 F.3d at 1179.

3      A "trade secret" is defined as:

4  Information, including a formula, pattern, compilation, program,

5  device, method, technique, or process that: (a)Derives independent

6  economic value, actual or potential, from not being generally

7  known to, and not being readily ascertainable by proper means by,

8  other persons who can obtain economic value from its disclosure or

9  use; **and** (b) Is the subject of efforts that are reasonable under

10  the circumstances to maintain its secrecy. RCW

11  19.108.010(4)(emphasis added).

12              **DISCUSSION, FINDINGS AND RECOMMENDATIONS**

13      The Agreements contain certain material that could be

14  considered proprietary trade secrets if broadcast to the public at

15  large or, more specifically, to the Defendants' competitors. Those

16  include details about (1) royalty fees and other compensation paid

17  to PTPI by Ambassador; (2) the term of Ambassador's contract with

18  PTPI; and (3) Ambassador's right to use the "People to People"

19  trademark and logo. See Bodholt Dec. Re: Defendants' Motion for

20  Protective Order (Ct. Rec. 123, p. 4, 8-9.) While Plaintiffs do

21  not concede that this information is proprietary, they argue that

22  the information sought to be protected has <u>already</u> been revealed

23  in public filings and/or on the public web sites of either

24  Ambassador or PTPI. See Declaration of Katherine C. Chamberlain,

25  Ct. Rec. 138 and Ex. A,B,C and D thereto.

26      **Royalty Fees**:

27      The 2007 Annual Report of PTPI discloses at Note 11 that the

28  total revenue generated from the relationship with the Ambassadors

FINDINGS AND RECOMMENDATIONS - 7

1   Program was $3,245,385 for the year ended December 31, 2006. Ct.

2   Rec. 138, Ex. D. This information discloses in the aggregate the

3   financial relationship between PTPI and Ambassador for the year on

4   which the action is premised, but does not disclose the financial

5   arrangement per each student delegate as described in the General

6   Contract. Thus, the reason stated by the Defendant for non-

7   disclosure maintains its viability. It would detrimental to

8   Ambassador if the individual student fee charged was known to the

9   public and hence any competitor of Ambassador.

10      **Term of Contract**:

11   The 2008 Ambassadors Group Annual Report discloses as follows:

12     "We have the exclusive right from People to People

13   International ("People to People") to develop and conduct student

14   programs for kindergarten through high school students using the

15   People to People name. We also have the non-exclusive right to

16   develop, market and operate programs for professionals, college

17   students and athletes using the People to People name. However, at

18   the present time, we are the only entity that has been given this

19   right by People to People. These rights, granted pursuant to

20   agreements with People to People, expire in 2010 and , at our

21   election, may be extended through 2020. People to People is a

22   private, non-profit organization dedicated to the promotion of

23   world peace through cultural exchange." Ct. Rec. 138, Ex. B.

24   Emphasis added.

25     This information is significant in the Court's view. First,

26   it clearly discloses to the public that the term of the

27   Defendants' agreement expires in 2010. Secondly, it capsulizes or

28

FINDINGS AND RECOMMENDATIONS - 8

summarizes the business model between the Defendants and discloses that model to the public.

Since this information was disclosed in Ambassador Group's Annual Report, it is difficult to understand the Defendants' position that such information, contained in the General Contract and as amended in the Amendment to General Contract, is proprietary and constitutes a "trade secret" when the information is not secret at all.

**Use of PTPI Trademark and Logo**:

Again, at p. 5 of the 2008 Ambassadors Annual Report, the Defendants clearly disclose to the public that Ambassador has registered or applied for a variety of service and trademarks. The Annual Report states, in pertinent part, under the heading of Service and Trademarks as follows: "In addition, we have the right, subject to certain exceptions, to use People to People's name, service mark and logo for use in our marketing. We believe that the strength of our service and trademarks is valuable to our business and intend to continue to protect and promote our marks as appropriate. We believe that our business is not overly dependent upon any one trademark or service mark." Ct. Rec. 138. Emphasis added.

Thus, the Defendants clearly have made public the information that they have a relationship for Ambassador to use the trademark and logo of PTPI and that Ambassador is not overly dependent on any one of the trademarks. The consideration paid to use same, if any, is not disclosed in either the Annual Report or the Agreements themselves.

FINDINGS AND RECOMMENDATIONS - 9

As to these particular items, the Defendants have failed to keep what they contend is private information *private*. The holder of a trade secret "must make reasonable efforts to maintain the secrecy of the material...Allowing private information to become public, even through carelessness, precludes protection as a trade secret." Woo v. Fireman's Fund Ins. Co., 137 Wash. App. 480, 490, 154 P.3d 236,241 (2007); RCW 19.108.010(4)(b).

An examination of the General Contract and the Consent to Assignment themselves reveals very little, if any, information about the model for education travel that Defendants assert is unusual and unique to the industry. In fact, there are no specific details about what is done during student or adult travel or how any excursion is organized in particular. It seems to the Court that such "nuts and bolts" information may be what is truly proprietary and subject to protective order. But that kind of information does not appear in the Agreements. The Defendants cannot, simply by proclaiming that the information contained in the Agreements or the deposition transcripts is "unique" or "unusual", make it so. As explained by the Ninth Circuit in Kamakana v. Honolulu: "Simply mentioning a general category of privilege, without further elaboration or any specific linkage with the documents, does not satisfy the burden." 337 F.3d 1172, 1184 (9th Cir. 2006).

Finally, none of the Agreements or the deposition transcripts contain information of a nature that might commonly be protected, i.e. names or addresses of participants, dates of travel programs, itineraries, information about industry contacts etc. This information, if disclosed to competitors, might truly harm the

FINDINGS AND RECOMMENDATIONS - 10

1   Defendants. But the Defendants do not claim that the Agreements or
2   deposition transcripts contain such confidential and proprietary
3   information.

4        Accordingly, the Court **does not find** that the Defendants have
5   met either the "compelling reasons" standard for overcoming the
6   strong presumption of public access or shown "good cause" that
7   specific prejudice or harm will result if no protective order is
8   granted <u>except</u> as to the individual student delegate fee
9   provisions contained in the General Contract and as discussed in
10  the depositions.

11       Based on the above stated discussion and findings, the Court
12  **RECOMMENDS AS FOLLOWS:**

13       1. That the District Judge grant Plaintiffs' Motion to Compel
14  Agreements (Ct. Rec. 100) except for Paragraph 6 B. of the General
15  Contract which should be redacted in its entirety before any
16  public filing with the court. Further that any reference to
17  specific student or adult fee amounts or volumes in the
18  depositions of Mary Eisenhower (p. 108-109) or Jeffrey Thomas (p.
19  100-105) should be redacted before public filing with the court.

20       2. That the District Judge order that Plaintiffs may use and
21  file the redacted Agreements and related deposition testimony
22  without further restriction in this litigation.

23       Any party may object to a magistrate judge's proposed
24  findings, recommendations or report within fourteen (14) days
25  following service with a copy thereof.  Such party shall file
26  written objections with the Clerk of the Court and serve
27  objections on all parties, specifically identifying the portions
28  to which objection is being made, and the basis therefor.  Any

FINDINGS AND RECOMMENDATIONS - 11

response to the objection shall be filed within fourteen (14) days
after receipt of the objection.  Attention is directed to Fed. R.
Civ. P. 6(d), which adds additional time after certain kinds of
service.

DATED this 2nd day of December, 2009.


            s/James P. Hutton
            JAMES P. HUTTON
        UNITED STATES MAGISTRATE JUDGE