# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| K.S. by her guardian ad litem, Kenneth L. Isserlis, and DOROTHY SPIOTTA and PAUL SPIOTTA,<br><br>Plaintiffs,<br><br>v.<br><br>AMBASSADOR PROGRAMS, INC.; AMBASSADOR GROUP INC.; and PEOPLE TO PEOPLE INTERNATIONAL,<br><br>Defendants. | NO. CV-08-243-RMP<br><br>ORDER GRANTING MOTION FOR CHANGE OF VENUE |

## I. Introduction

Before the Court is Plaintiffs' Motion for Change of Venue (Ct. Rec. 236). The Court has reviewed the Plaintiffs' Motion (Ct. Rec. 236), supporting memorandum (Ct. Rec. 237) and declaration and exhibits (Ct. Rec. 238), Defendants' response memoranda in opposition to the motion (Ct. Rec. 274) (Ct. Rec. 311) and supporting declarations and exhibits (Ct. Rec. 312) (Ct. Rec. 313) (Ct. Rec. 314), as well as Plaintiffs' reply memorandum (Ct. Rec. 287) declarations and exhibits (Ct. Recs. 285, 286), Plaintiffs' Supplemental Memorandum (Ct. Rec. 329), Defendants' most recent witness lists (Ct. Recs. 300, 301), and the remaining pleadings and file in this case.

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 1

An oral argument hearing was held on April 6, 2010. Tim Ford appeared and argued on behalf of the Plaintiffs. Co-counsel Katie Chamberlain participated by telephone. Geana Van Dessel and Brian Rekofke appeared for Ambassador Programs, Inc., and Ambassadors Group, Inc. ("Ambassador"). Jim King appeared for People to People International ("PTPI"). Ms. Van Dessel argued on behalf of all Defendants. At the hearing, the Court granted the Defendants' in-court motion to consider the responsive memorandum to the motion to change venue (Ct. Rec. 274) as joint responses by all defendants (Ct. Rec. 302). The Court also granted Defendants five days from the date of the hearing to file supplemental briefing on the issue of the effect of the forum selection clause in the alleged contract between the Spiottas and Ambassador.

## II. Background

K.S. is the minor daughter of Dorothy and Paul Spiotta (Ct. Rec. 75). The Spiotta family lives in Virginia (Ct. Rec. 75). On October 22, 2005, a Senior Program Director for Ambassador, Joel Hoadley, facilitated an informational meeting at Northern Virginia Community College for potential participants in a study abroad program in Australia in summer 2006 (Ct. Rec. 313 at 2). Mr. Hoadley states in his declaration that K.S. and her family "were invited to attend" the October 22 meeting (Ct. Rec. 313 at 2). Mr. Hoadley declares that he distributed a 2006 People to People Student Ambassador Program Application booklet to every attendee at the October 22 meeting (Ct. Rec. 313 at 2). The booklet contained a page with the heading "Terms and Conditions," in a font smaller than that on other pages of the booklet, that stated in part:

> The venue for any disputes regarding this agreement or the program shall be Superior Court of Spokane County, Spokane, Washington.

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 2

> This agreement shall be construed in accordance with the laws of the state of Washington.

(Ct. Rec. 313-1 at 13).

Mr. Spiotta applied online for K.S.'s enrollment in the Defendants' 2006 travel program in Australia (Ct. Rec. 285-1 at 6). He submitted the online application either on October 22, 2005, or around that date (Ct. Rec. 285-1 at 6). Mr. Spiotta does not recall whether K.S. was present while he prepared and submitted the application online or whether he was asked to agree to certain provisions before proceeding through the application process (Ct. Rec. 285-1 at 6).

Defendants offer a record purporting to show that K.S. applied online but submit no copies of the completed forms that Mr. Spiotta allegedly submitted in 2005. Instead, Defendants submit declarations from Brian Schmidt, Head of Application Development from October 2003 through January 2008, and Kris Bleisner, current Vice President of Technology for Ambassador Programs, Inc., explaining Ambassador's five steps of the online process in 2005-2006 for the 2006 travel programs. (Ct. Rec. 39); (Ct. Rec. 314). Attached to their declarations are printouts of the screens of the website containing the five application steps as they appeared during the application season for the 2006 travel programs. (Ct. Rec. 39); (Ct. Rec. 314). The printouts each show a portion of a specific page of the agreement. *Id.* In order to view the entire page, a viewer would be required to scroll down to reveal the remaining text for that page. *Id.*

Step 2 consists of "Terms and Conditions and Information" (Ct. Rec. 314-1 at 12). At the bottom of the page an applicant would have had to select "I agree" or "I do not agree" to the statement "I/We have read and understand the terms and conditions" before proceeding beyond Step 2 (Ct. Rec. 314-1 at 12). An applicant also had the option of following a hyperlink to "Printer Friendly Terms and Conditions" (Ct. Rec. 314-1 at 12). The "Printer Friendly" version has larger text

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 3

and allegedly contains the same provision as the printed booklet under the "Terms and Conditions" section. (Ct. Rec. 39-3 at 12); (Ct. Rec. 314-2 at 23).

In summer 2006, K.S., then eleven years old, traveled to Australia through the People to People Student Ambassador Program. Shortly after returning from Australia, according to Plaintiffs, K.S. was hospitalized (Ct. Rec. 75, p. 8). Over the next five months, the Plaintiffs maintain, K.S. spent about seven weeks in the hospital (Ct. Rec. 75, p. 8).

Plaintiffs filed lawsuits alleging the same claims in this Court and in Spokane County Superior Court on or around the same date in 2008 (Ct. Rec. 53); (Ct. Rec. 238 at 1). Those claims included negligence, breach of contract, fraud, and consumer protection violations (Ct. Rec. 1, 5, 10, 75). Plaintiffs allege that they filed suit in Spokane County as well as in federal court in anticipation that Ambassadors would argue that the contract language required lawsuits to be pursued in Spokane County Superior Court (Ct. Rec. 53). The parties later stipulated to dismissal of the state action and Defendants agreed not to seek to remand Plaintiffs' federal court case to state court (Ct. Rec. 53).

During the hearing on this motion, Plaintiffs represented that of the 40 people "very likely" to be Plaintiffs' witnesses at trial, approximately 27 are located in the Virginia/Washington D.C. area, while five of those 40 witnesses are located in Spokane. Defendants represented that six of their fifteen listed witnesses are located in the Virginia/Washington D.C. area, one witness in England, one witness in Oregon, one witness in California, and six located in Washington state, with four of those witnesses in Spokane and two in Seattle.

### III. Change of Venue Standard

"For the federal court system, Congress has codified the doctrine [of forum

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 4

non conveniens] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184 (2007). Section 1404(a) of chapter 28 U.S.C. provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Courts have interpreted the "where it might have been brought" language to mean that under § 1404(a), the moving party must first show that the proposed transferee court possesses subject matter jurisdiction over the action, the parties would be subject to personal jurisdiction in the transferee court, and venue would have been proper in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir.1974). Once those threshold requirements are met, this Court weighs several considerations when determining whether transfer is appropriate: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and availability of compulsory process; (4) ease of access to the evidence; (5) feasibility of consolidation of other claims; (6) familiarity of each forum with the applicable law; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *Decker Coal*, 805 F.2d at 843.

### III. Analysis

A. *Threshold considerations*

As the party moving for the change of venue, Plaintiffs must first show that the United States District Court for the Eastern District of Virginia has subject matter jurisdiction over the action, the Defendants are subject to personal

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 5

jurisdiction in the Eastern District of Virginia, and that venue would have been proper in the Eastern District of Virginia at the commencement of the Plaintiffs' suit. *Hoffman*, 363 U.S. at 343-44.

This Court has jurisdiction pursuant to diversity jurisdiction, which requires complete diversity of the parties. 28 U.S.C. §1332; *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467 (1996). The parties' citizenship would not vary if this case were moved to Virginia. Therefore, complete diversity would continue to exist, and the Virginia court would have subject matter jurisdiction pursuant to 28 U.S.C. §1332.

None of the Defendants dispute that the United States District Court for the Eastern District of Virginia also has personal jurisdiction over the Defendants. Sufficient minimum contacts for specific personal jurisdiction exist where: a non-resident defendant purposefully directs his activities or consummates some transaction with the forum or resident thereof; the claim at issue arises out of the defendant's forum-related activities; and the exercise of jurisdiction comports with fair play and substantial justice. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir.2009). Defendants held informational meetings and otherwise reached out to families and students who would be traveling from Virginia to participate in Defendants' programs (Ct. Rec. 313 at 2). The Spiottas' transactions with Defendants were via the internet and via the representatives who interacted with the Spiottas in Virginia. No alleged interaction occurred in the State of Washington. Therefore, the Court finds that there are sufficient contacts by the Defendants in Virginia to establish personal jurisdiction in the Eastern District of Virginia.

Defendants dispute whether venue would have been proper in the United States District Court for the Eastern District of Virginia, because of the forum

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 6

selection clause that Defendants allege was part of an agreement between the two parties. Under both Washington and Virginia law, the burden of proving the existence of a contract is on the party asserting its existence. *Siekawitch v. Wash. Beef Producers, Inc.*, 58 Wash.App. 454, 461, 793 P.2d 994 (1990); *Richardson v. Richardson*, 392 S.E .2d 688, 690 (Va.App.1990), *overruled on other grounds by Flanary v. Milton*, 556 S.E.2d 767, 768 (Va.2002); *see also* 1 Williston on Contracts § 4:20 (4th ed.) (Updated May 2009) ("The question in every case is one of fact, depending upon the circumstances of each case and always with the burden on the party who alleges a contract and seeks to enforce it to prove its existence."). Here, the Defendants are seeking to enforce one particular clause of a contract, and the effect of that particular clause on this motion. Therefore, the Court does not make any findings as to the validity of any contract between the parties as a whole.

However, as relates to the forum selection clause, Defendants have not provided a written agreement signed by any member of the Spiotta family to support their contention that Plaintiffs entered into an enforceable contract with the Defendants that contains the forum selection clause. Instead, Defendants rely on submissions that purport to be printed copies of web pages that Mr. Spiotta allegedly accessed during the application process. (Ct. Rec. 39); (Ct. Rec. 314). Defendants contend that Mr. Spiotta would have "clicked" on the button that states "I/We have read and understand the terms and conditions" to proceed to the next step of the application process.

Plaintiffs dispute the accuracy of Defendants' offered exhibits on the basis that the font has been enlarged on the website exhibits attached to Mr. Bleisner's declaration as compared to the website exhibits submitted with Mr. Schmidt's previous declaration. (Ct. Rec. 39); (Ct. Rec. 314). In addition, Plaintiffs

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 7

generally dispute whether the website printouts accurately depict the forms that Mr. Spiotta filled out and submitted online in fall 2005. To illustrate that point, Plaintiffs emphasize that both the website exhibits refer to a "Gateways to China" trip in Step 3 of the application process, rather than the trip to Australia in which K.S. participated. (Ct. Rec. 39-2 at 11); (Ct. Rec. 314-1 at 15).

Even if there were solid evidence of a forum selection clause, Defendants produce no evidence that any member of the Spiotta family would have agreed to more than having "read and under[stood]" the terms of it. *See* (Ct. Rec. 314-1 at 12). There are also several unresolved issues as to whom and to what claims the contract, particularly the forum selection clause, applies. As this Court reasoned over one year ago in Ct. Rec. 60, it is not clear whether K.S., as a minor third party to the contract, is bound by the clause. *Oltman v. Holland America Line USA, Inc.*, 163 Wn.2d 236, 250, 178 P.3d 981. It is equally unclear whether the plain language of the clause that the Defendants are trying to enforce even purports to cover non-contract claims. *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005) (Washington courts "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties"); *Smith v. Farrell*, 199 Va. 121, 127 (1957) (terms of a contract, if enforceable, must be "sufficiently definite to enable a court to give it an exact meaning").

Defendants rely on the legal rule that forum selection clauses are presumptively valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed. 622 (1991). However, that doctrine comes into play only when determining whether to enforce a forum selection clause to which the parties have agreed. *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 8

273, 280 (9th Cir.1984) (courts respect forum selection clauses "as the expressed intent of the parties"); *see also Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir.1998) (where there is no contract, a forum selection clause cannot deprive a party of access to the courts). In this case, the evidence supports only that Plaintiffs may have clicked on the button that states that they had "read and under[stood]" the forum selection clause, not that they agreed to be bound by it.

Even if the Court, arguendo, views the contract as being enforceable and containing the forum selection clause that Defendants argue it contains, the Court is persuaded that Defendants waived their rights under the alleged clause when they stipulated to having this case proceed only in the United States District Court for the Eastern District of Washington. That stipulation, Ct. Rec 53, states:

> THE PARTIES HERETO, by and through their respective counsel of record, hereby stipulate that [the state court] case may be dismissed with prejudice and without an award of fees or costs to either party, and move this Court to so order.
> As noted in paragraph 2.4 of Plaintiffs' complaint, Plaintiffs filed this action in Spokane Superior Court for the sole purpose of preserving their rights and remedies. Prior to filing this action Plaintiffs filed the same lawsuit in the Eastern District of Washington. Since then, Ambassador Programs, Inc., Ambassadors Group, Inc., and People to People International, have represented to Plaintiffs that they will not seek to remand Plaintiffs' federal court case to state court or otherwise use the dismissal of this case against Plaintiffs. . . .

(Ct. Rec. 53).

By agreeing not to pursue litigation in Spokane County Superior Court, Defendants themselves departed from the language of the forum selection clause they now seek to enforce. (Ct. Rec. 313-1 at 13) ("venue for any disputes regarding this agreement or the program shall be Superior Court of Spokane County"). The Court finds that even if Plaintiffs did complete the online application as contended by Defendants, that Plaintiffs did not "agree" to the forum selection clause, and alternatively, Defendants waived any right under the

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 9

forum selection clause by stipulating that this case could be tried in federal court.

B. *§ 1404(a) balancing considerations*

Even where parties have definitely agreed to a forum selection clause, that clause is a significant but not determinative factor in a section 1404(a) balancing analysis. *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29, 108 S.Ct. 2239 (1988). Section 1404(a) vests discretion in the district court to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). This case-specific analysis under §1404(a) calls upon the court to consider "the parties' private expression of their venue preferences" alongside other issues affecting the convenience of the parties and witnesses. *Stewart*, 487 U.S. at 30. Because the Defendants have offered little to show that the parties entered into a forum selection clause and, even if entered into, was likely waived, the forum selection clause becomes less significant in the §1404(a) analysis in this case and does not weigh against transfer. *See Stewart*, 487 U.S. at 29.

Several of the other balancing factors are not at issue in this case. Plaintiffs move for change of venue in this instance, and the Plaintiffs themselves live in Virginia. Therefore, Plaintiffs' choice of forum weighs toward transfer. Feasibility of consolidation of other claims is not relevant here, and, there is no substantial physical evidence that would be difficult to transport to either Washington or Virginia.

The location of likely witnesses, by contrast, weighs heavily toward transfer to the Eastern District of Virginia. Plaintiffs stated at oral argument they intend to call 27 witnesses from Virginia or the surrounding area. *See also* (Ct. Rec. 238.)

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 10

Several of those witnesses are K.S.'s medical providers, for whom it would be a great inconvenience to travel to Washington for trial, because of conflicts in schedules and professional duties in the Virginia area. (Ct. Rec. 238.) Defendants' own witnesses are not concentrated in Spokane but are located equally between Washington state and Virginia, and other witnesses are located in Oregon, California, and the United Kingdom. PTPI separately indicated that it may call Mary Jean Eisenhower, who appears, based on past declarations, to be located in Missouri. (Ct. Rec. 301) (PTPI's Witness List and Joinder in Trial Witness List of Ambassador Defendants); (Ct. Rec. 124) (Declaration of Mary Jean Eisenhower in support of a past motion by Defendants). The convenience of the parties relies in part on the ability to work with their witnesses and assure that the witnesses are available at the appropriate time to testify. Having the case tried in the district that is closest to many of the witnesses would make that location more convenient for the attorneys and parties. The Court finds that Virginia is more convenient to the parties than Washington in regard to location and availability of witnesses.

The issue of familiarity with applicable law also weighs toward transfer to the Eastern District of Virginia. The Court recently dismissed the Plaintiffs' Washington Consumer Protection Act, chapter 19.86 RCW, claim, but has not dismissed Plaintiffs' claim under the Virginia Consumer Protection Act, Code of Virginia §§ 59.1-200 through -207 (Ct. Rec. 330). The United States District Court in the Eastern District of Virginia would be more familiar with the substantive law governing the Virginia consumer protection claim than this Court residing in Washington. Transfer to Virginia would allow a Virginia-based court to resolve Virginia claims.

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 11

The interest in having local disputes settled locally, where witnesses may more conveniently testify and the majority of the contacts and events underlying Plaintiffs' claims took place, weighs toward transfer to the Eastern District of Virginia. In addition, Plaintiffs submitted evidence that the Eastern District of Virginia has a record of having cases tried in a shorter time period than the Eastern District of Washington.[1] Therefore, the interests of justice and the interests of the parties in resolving this case weighs toward transfer to Virginia.

### IV. Conclusion

The Court has considered the factors relating to convenience and fairness for the parties and witnesses and the general interest of justice, including judicial economy, and finds that transfer is justified here. The Plaintiffs have, therefore, met their burden of showing that the United States District Court Eastern District of Virginia is the more appropriate forum for this action.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Change of Venue (**Ct. Rec. 236**) is **GRANTED**.
2. All pending motions in this matter are **RESERVED** for decision by the district court in the Eastern District of Virginia.

/
/
/

---

[1] Although this Court rescheduled this case to begin trial on August 2, 2010, after two previous trial dates had been stricken, this district has a high number of criminal cases that can take precedence over civil cases for actual trial schedules.

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 12

3. The District Court Executive is directed to forward the file, along with a copy of this Order to the Clerk of Court, United States District Court for the Eastern District of Virginia.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 27th day of April, 2010.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Court Judge

ORDER GRANTING MOTION FOR CHANGE OF VENUE ~ 13