IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

K.S., by her interim guardians ad litem, )
et al., )
    Plaintiffs, )
)
v. ) No. 1:10cv439
)
AMBASSADOR PROGRAMS INC., et al., )
    Defendants. )

## MEMORANDUM OPINION

At issue following settlement of this personal injury case involving a minor plaintiff is whether the amount and terms of the settlement, which must be judicially approved in accordance with Va. Code § 8.01-424, should remain under seal. For the reasons that follow, continued sealing is not warranted.

### I.[1]

Plaintiffs in this matter are K.S., a minor who sued by her guardian *ad litem* Kenneth L. Isserlis, and K.S.'s parents, Dorothy Spiotta and Paul Spiotta (collectively "plaintiffs"). Plaintiffs named three defendants in this suit: Ambassador Programs, Inc., Ambassadors Group, Inc., and People to People International, Inc. (collectively "defendants"). People to People International ("PTPI") is a 501(c)(3) non-profit organization that promotes international understanding by, among other things, supporting international trips for American students. PTPI was originally founded by President Dwight D. Eisenhower, and several presidents since then have served in the role of PTPI's honorary chairperson. Yet, PTPI does not directly

---

[1] This statement reflects both the allegations in the parties' pleadings and facts that are not in dispute. Its purpose is not to express any view on the merits of plaintiffs' claims, but merely to furnish context for resolution of the sealing issue presented.

supervise the international trips that bear its name. Instead, it has licensed its intellectual property to defendant Ambassador Programs, Inc., a for-profit company that organizes and conducts the various international trips, including the one at issue in this case.[2]

In 2005, K.S.'s parents received a mailing from Ambassador Programs stating that K.S. had been selected to become a People to People Student Ambassador. After attending informational sessions to learn more about the program, K.S.'s parents agreed to let K.S., then eleven years old, participate in a three-week trip to Australia. In their complaint, Plaintiffs alleged that defendants misled them into believing that the program was entirely managed by a nonprofit organization, when in fact a for-profit business, Ambassador Programs, managed the trips.

K.S.'s trip to Australia began on July 25, 2006. Although K.S.'s precise weight at the start of the trip is unknown, her weight at a doctor's visit approximately one month prior to the trip was 110 pounds. During the trip, K.S. suffered from an eating disorder that led her to avoid eating sufficient amounts of food. As a result, when she returned from her trip, she weighed 91 pounds. Shortly thereafter, K.S. was hospitalized. K.S.'s parents have alleged that the trip supervisors acted negligently in failing to recognize K.S.'s illness and arrange for prompt treatment. Although the parties dispute the extent to which K.S.'s weight loss occurred on the trip itself, an expert in eating disorders called by the plaintiffs was prepared to testify that, had defendants recognized the signs of K.S.'s condition during the three-week trip and acted

---

[2] The role of the third named defendant, Ambassadors Group, Inc., is not material to resolution of the sealing issue.

promptly to arrange for suitable treatment, K.S. would not have required the lengthy hospitalization.

Plaintiffs brought this action against defendants seeking damages based on allegations of negligence, fraud, violation of the Virginia Consumer Protection Act (Va. Code § 59.1-200), and breach of contract. Damages in this case center primarily on K.S.'s injuries and the costs of hospitalization. A jury trial was scheduled to commence at 10:00 a.m., Tuesday, August 17, 2010. On August 5, 2010, only twelve days prior to trial, the parties settled all claims, thereby obviating the need for a trial. As required by Va. Code § 8.01-424, a hearing was convened on Friday, August 13, 2010, for judicial review and approval of the settlement terms. Several documents were filed under seal in advance of this hearing, including the Settlement Agreement and Release, a Joint Memorandum of Settlement Terms, and the Report and Recommendation by K.S.'s guardian *ad litem*. (Doc. No. 511). The settlement was approved by Order dated August 26, 2010. *See K.S. v. Ambassador Programs, Inc.*, No. 1:10cv439 (E.D. Va. Aug. 26, 2010) (Final Order) (Doc. No. 518). The various filings reflecting the terms of the settlement, including the August 26 Order, were temporarily sealed pending resolution of the parties' permanent sealing request. *See K.S. v. Ambassador Programs, Inc.*, No. 1:10cv439 (E.D. Va. Aug. 26, 2010) (Order) (Doc. No. 517); *see also In re Knight Pub. Co.*, 743 F.2d 231, 235 n.1 (4th Cir. 1984) ("The court may temporarily seal the documents while the motion to seal is under consideration so that the issue is not mooted by the immediate availability of the documents."). The propriety of this sealing request is the question presented.

## II.

Few principles have as long a pedigree and are as well-settled as the public's right of access to court proceedings and judicial documents. With strong roots in the common law and the First Amendment, this principle is also central to the legitimacy and independence of the judiciary.[3] *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (recognizing a right of access in criminal cases under the First Amendment and common law); *Knight*, 743 F.2d at 233 (same); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (extending the First Amendment and common law right of access to civil cases). While this right is not absolute, courts have uniformly emphasized that sealing should be the relatively rare exception, not the common practice.[4] *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) (sealing is reserved only for "unusual" cases).

Acknowledging the important policy underpinnings of the public's right to access court proceedings and judicial documents, courts in the Fourth Circuit and elsewhere have prescribed specific guidelines to be followed in resolving a sealing request.[5] Assuming the documents are

---

[3] *See* T. S. Ellis, III, *Systematic Justice: Sealing, Judicial Transparency, and Judicial Independence*, 53 Vill. L. Rev. 939, 940 (2008) (discussing the important relationship between public access to judicial proceeds, *i.e.*, judicial transparency, and judicial independence).

[4] *See* Joseph F. Anderson, Jr., *Hidden from the Public by Order of the Court: The Case Against Government-Enforced Secrecy*, 55 S.C.L. Rev. 711, 712 (2004) (discussing the "discernable and troubling trend in civil litigation" of sealing settlement terms by court order).

[5] Ellis, 53 Vill. L. Rev. at 945 & n.27 (collecting cases from various circuits on procedures for sealing).

"judicial records" to which the right of access applies,[6] courts accord the documents "a presumption of access" that can only be rebutted "if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253; *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000); *Knight*, 743 F.2d at 235. Specifically, before a court may order the sealing of any court records, a decision that affects not only the rights of the parties in the litigation but also the rights of the public as a whole, it must (i) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object; (ii) consider less drastic alternatives to sealing the documents; and (iii) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft*, 218 F.3d at 302. In resolving a sealing request, a court must balance several factors, including (i) whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; (ii) whether release would enhance the public's understanding of an important historical event; and (iii) whether the public has already had access to the information contained in the records. *Id.*; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-608 (1978) (discussing these factors). And importantly, even where, as here, all of the litigants support the motion to seal, and even where a public hearing on the question does not bring forth anyone to assert the right of access, a court must still engage in a careful deliberation on the issue. *See P&G v. Bankers Trust Co.*, 78 F.3d 219, 222, 225 (6th Cir.

---

[6] Not all court filings are "judicial documents" subject to the right of access. *In re Policy Mgmt. Sys. Corp.*, 1995 U.S. App. LEXIS 25900, at *9-10 (4th Cir. Sept. 13, 1995). In this case, despite the parties' attempt to argue otherwise, there is no question that the settlement documents are "judicial documents" because they "adjudicate[] substantive rights and serve[] as a substitute for a trial." *Id.*; *Rushford*, 846 F.2d at 253.

1996) (parties may not be allowed to determine on their own whether documents merit sealing). It is these principles that govern the sealing question in this case.

## III.

The procedural requirements for sealing have been satisfied here. A notice issued for a public hearing on the sealing of the settlement documents, and a hearing was held. No members of the press or the general public appeared to support or to object to the sealing request. The parties appeared, by counsel, and consistent with the memoranda previously filed, they argued that sealing is appropriate for two reasons.[7] First, they claim that the settlement terms are likely to be used for an improper purpose, such as negative publicity against defendants or the use of the settlement terms by other potential plaintiffs. Second, the parties claim that K.S.'s right to privacy would be undermined by exposing details of her settlement and her physical, mental, and emotional injuries. It remains to determine whether these reasons outweigh the important interests in ensuring public access to court records.

As to plaintiff's first argument, while negative publicity may be undesirable for defendants, it does not amount to an "improper purpose" sufficient to warrant sealing. *See Nixon*, 435 U.S. at 598. The statements are not akin to "disgusting details of a divorce case" or "libelous statements for press consumption," nor is any "scandal" created or promoted by the release of the settlement numbers. *Id.* Indeed, the Court's conclusion that these figures are fair and reasonable under the circumstances underscores the fact that the settlement terms are not

---

[7] It is unclear from the parties' motion precisely which documents the parties seek to have sealed, but at a minimum, it is clear that the parties are seeking the sealing of any portion of any court record that discusses the dollar amount of the settlement or from which that amount can be inferred.

scandalous or otherwise likely to attract public attention. Additionally, the parties' suggestion that other potential claimants may use the settlement numbers from this case to inform their negotiating position in other disputes with defendants is merely hypothetical, and it would be unlikely for another case to arise with facts so similar to those here. In any event, the use of the settlement figures by parties in other civil actions is not be an "improper purpose" within the meaning of *Nixon. Id.*

Nor is K.S.'s privacy interest imperiled by unsealing the settlement terms. The identity of K.S., who is now fifteen years old, has been protected throughout the proceeding by referring only to her initials. Her identity will remain confidential in this regard even in the settlement, and revealing the dollar amounts that K.S. is to receive will not affect her level of public exposure. Furthermore, the settlement amounts add little to the information already made public about plaintiffs through the other filings in this case. Accordingly, revealing the settlement figures will not substantially diminish K.S.'s privacy.

One might argue that sealing settlement agreements furthers the public policy favoring out-of-court settlement. *Cf. Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes."). This argument proves too much; it result in the exception swallowing the rule. While the interest in fostering settlement is undeniably woven into the judicial fabric, this generalized interest cannot heavily outweigh the public's interest in access to the judicial process. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (interest in confidential settlements does not outweigh the interest in public access where the settlements are subject to judicial approval); *Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 U.S. Dist. LEXIS 29478 (W.D. Va.

7

Mar. 26, 2010) (denying request to seal settlement agreement where parties cited only generalized interest in private settlements). To conclude otherwise would, as noted, convert the exception to the commonplace, as all settlements would be sealed whenever vetted by the courts. At the very least, parties cannot rely on such a broad policy statement where, as here, they have given no indication that publication would deter or prevent their settlement.

Settlement agreements, of course, do not generally become part of the public record because they do not ordinarily require judicial consideration or approval. When parties settle a case out of court, they are free to craft their own terms that suit their particular needs, including strict confidentiality clauses. This case is unusual, although not uncommon, in that it involves a minor plaintiff, and the laws of the Commonwealth of Virginia require that parties seek judicial approval in settling any case involving a minor or other "person under a disability." Va. Code § 8.01-424; *see also* Va. Code. § 8.01-2 (defining "person under a disability"). By mandating judicial review, the statute ensures that the compromise serves the best interests of a party who lacks the legal capacity to enter a binding agreement. *See* Va. Code § 8.01-424; *Gunn v. Richmond Community Hospital, Inc.*, 235 Va. 282, 286 (1988). No good cause or persuasive reason has been adduced to warrant concealing judicial review of the settlement from public scrutiny.

For the foregoing reasons, the joint memorandum of settlement terms, the report and recommendation by K.S.'s guardian *ad litem*, and the Order approving the settlement must not remain under seal. As to the Settlement Agreement and Release, there is no need for this document to be part of the court file, inasmuch as the necessary settlement terms are disclosed in

the parties' other filings, and accordingly, the parties will be allowed to withdraw this document.

An appropriate Order will issue.

Alexandria, Virginia
September 3, 2010

/s/
_____
T. S. Ellis, III
United States District Judge